IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| AMY LAURENT,<br><br>    Plaintiff,<br>vs.<br><br>EQUIFAX CREDIT INFORMATION SERVICES, INC., AIRTOUCH COMMUNICATIONS, AIRTOUCH CELLULAR, NEIMAN-MARCUS HOLDINGS, INC., and SAKS & CO., d/b/a SAKS FIFTH AVENUE,<br><br>    Defendants. | No. CIV 98-1190 PK/RLP |

MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Defendant Equifax Credit Information Services, Inc.'s Motion for Summary Judgment filed July 1, 1999 (doc. 68), and the court, being fully advised in the premises, finds that the motion is well taken on the federal claim under the Fair Credit Reporting Act (FCRA), and should be granted on that claim. The court declines to exercise supplemental jurisdiction on the remaining state law claims; they will be remanded to state court. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988).

Background

This action was removed from state district court by Defendant Equifax,

the only remaining defendant. The following facts are uncontroverted. Plaintiff filed for chapter 7 bankruptcy in March 1997; however, the bankruptcy petition was dismissed by bankruptcy court order when Plaintiff failed to appear at the 341(a) meeting of creditors. Defendant Equifax is a consumer reporting agency which compiles information into consumer credit reports that can be distributed to users of such information. Plaintiff informed Defendant Equifax that her bankruptcy petition had been dismissed and provided it a copy of the pertinent order, yet Defendant Equifax did not delete the notation "included in bankruptcy" on several accounts. Plaintiff obtained several reports from Defendant Equifax with this notation that Plaintiff found objectionable

Plaintiff voluntarily supplied one of these reports (April 1998) to a prospective employer (Jeffrey Holinski) who told the Plaintiff that he wanted a credit report to be sure that Plaintiff would be able to charge incidental items such as film and computer paper for later reimbursement. See Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment filed July 1, 1999 (doc. 70), Exh. A at 66-67, 77-78 (Laurent Dep.). The report in question was obtained by the Plaintiff for the purpose of checking for errors, and when she sent it to Mr. Holinski, she notified him that the report contained incorrect information about bankruptcy. See id. Memorandum at 2; Exh. A at 78 (Laurent Dep.). In response to Mr. Holinski's concern that the bankruptcy was still listed on the Equifax report, Plaintiff told him that she was disputing those

items and that she would send him the results of the dispute. See id. Exh. A at 79-80 (Laurent Dep.). Thereafter, Plaintiff faxed another updated Equifax report (June 9, 1998) to Mr. Holinski. She did not send him a credit report by one of the other credit reporting agencies such as Experion or Trans Union because the Equifax report was on hand. See id. Exh. A at 78-79. Upon seeing that the information about bankruptcy remained, and despite having been given a copy of the bankruptcy dismissal order, Mr. Holinski affirmed his decision to retract his offer of employment. See id. Exh. D (Holinski Ltr.).

## Discussion

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An important function of summary judgment is to eliminate factually unsupported claims. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The nonmovant may not rest upon her pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Once the movant has identified an element of a claim that the nonmovant cannot prove, all other factual disputes concerning the claim become immaterial and summary judgment is properly entered. See Celotex, 477 U.S. at 322-23. The summary

judgment material relied upon by the nonmovant is viewed in the light most favorable to her; however, inferences must be reasonable. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 595-98 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The summary judgment material must contain probative evidence that would allow a trier of fact to find in her favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

Count I of the Second Amended Complaint filed January 5, 1999 (doc. 18) alleges that Defendant Equifax failed to timely correct inaccurate information on Plaintiff and breached its duty to Plaintiff under the FCRA. The FCRA requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). A "consumer report" is generally defined as:

> any written, oral or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for–
>
> (A) credit or insurance to be used primarily for personal, family, or household purposes;
>
> (B) employment purposes; or
>
> (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).  It does not include any "report containing information solely as to transactions or experiences between the consumer and the person making the report."  15 U.S.C. § 1681a(d)(2)(A)(i).  Defendant Equifax refers to this excepted report as a "consumer disclosure."

Defendant Equifax moves for summary judgment on the FCRA claim on the grounds that (1) the reports issued to Plaintiff are not "consumer reports," but rather excepted "consumer disclosures,"  (2) no report contained incorrect information, and (3) no evidence suggests a willful violation that would support punitive damages.  Plaintiff contends that genuine issues of material fact preclude summary judgment and disputes Defendant's grounds as a matter of law.

The parties are in agreement that to succeed on the FCRA claim, a plaintiff must show that "(1) the consumer reporting agency was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury."  <u>Whelan v. Trans Union Credit Reporting</u>, 862 F. Supp. 824, 829 (E.D.N.Y. 1994).

A.

The court is persuaded that Plaintiff cannot prevail where the consumer reporting agency merely furnished the credit file to the consumer, and the

consumer, knowing of inaccurate information, disseminates the file to third parties. Although the parties dispute whether a credit file is a "consumer report," no genuine issue of material fact exists about whether Plaintiff requested and received her Equifax credit file.[1]  The reports in question are marked "Credit File" or "Credit History" and include a section entitled "Companies that Requested Your Credit File" or "Companies that Requested Your Credit History" with a listing of such companies.  See Plaintiff's Memorandum, Ex.C (credit files) (emphasis supplied).  Further, it is uncontroverted that Plaintiff obtained her credit file for her personal use, and did not notify Defendant Equifax that she intended to disseminate her copies to Mr. Holinski.

In Hyde v. Hibernia Nat'l Bank, 861 F.2d 446, 449 (5th Cir. 1988), the Fifth Circuit discussed when injury is occasioned under FCRA in the context of a limitations discussion.  Although the Tenth Circuit rejected the discovery rule of Hyde in Clark v. State Farm Fire & Cas. Ins. Co., 54 F.3d 669, 672 (10th Cir. 1995), Hyde contains a pertinent discussion on why an action does not arise upon mere receipt of an inaccurate report by a consumer:

> A consumer may learn that a credit agency possesses erroneous information in its files, but he has no cause of action in tort against the credit agency until the agency somehow injures him.  The statute

---

[1] The court has not considered the Affidavit of Janet Mullins filed July 1, 1999 (doc. 72) included with Defendant Equifax's reply brief.  See Beaird v. Seagate Technology, Inc., 145 F.3d 1159, 1164-65 (10th Cir.), cert. denied, 119 S. Ct. 617 (1998).

> does not allow suit against the credit agency for creating, possessing, or revealing to a consumer credit files containing erroneous information, but establishes a cause of action to redress specific injuries sustained by the consumer.
>
> The requirement that a consumer sustain some injury in order to establish a cause of action suggests that the statute should be triggered when the agency issues an erroneous report to an institution with which the consumer is dealing.

Hyde, 861 F.2d at 449; accord Renninger v. Chexsystems, No. 98 C 669, 1998 WL 295497, at * 5 (N.D. Ill. May 22, 1998).

Taking a different path, the Ninth Circuit stated that "[n]o court has held that the prima facie case required that an inaccurate report was ever disseminated," and concluded that liability under § 1681(e)b did not require that the report be transmitted to third parties. See Guimond v. Trans Union Credit Information Co., 45 F.3d 1329, 1333 & n.3 (9th Cir. 1995). The Guimond panel's remarks came in the context of holding that a denial of credit is not a prerequisite for a FCRA action. See id. The Second Circuit highlighted the problem with this approach–it has the potential to eliminate causation. See Casella v. Equifax Credit Information Servs., 56 F.3d 469, 475 (2d Cir. 1995) ("Whether or not we would agree with Guimond [concerning denial of credit not being a prerequisite], we do not believe a plaintiff can recover for pain and suffering when he has failed to show that any creditor or other person ever learned of the derogatory information from a credit reporting agency."). Moreover, the obligation to "follow reasonable procedures to assure maximum

possible accuracy" pertains only to preparation of a consumer report about an individual. 15 U.S.C. § 1681e(b). Finally, because a consumer reporting agency is required to disclose a consumer's credit file upon consumer request, <u>see</u> 15 U.S.C. § 1681g, the consumer reporting agency arguably would be subject to liability whenever it made such a disclosure.

The Tenth Circuit observed that "FCRA enables consumers to protect their reputations and to protect themselves against the dissemination of false or misleading credit information ." <u>Matthiesen v. Banc One Mtg. Corp.</u>, 173 F.3d 1242, 1245 (10th Cir. 1999) (citations omitted). This suggests that the act of dissemination to a third party by the consumer reporting agency must be the focus of liability. Otherwise, a consumer reporting agency would be responsible for dissemination over which it did not intend and had no control. This would defeat many important objectives of the FCRA including the correction and non-dissemination of inaccurate information. <u>See</u> <u>id.</u> ("The purpose of FCRA is to ensure accuracy and fairness in credit reporting and to require that such reporting is confidential, accurate, relevant and proper.").

### B.

In the alternative, summary judgment is also appropriate on the grounds that the information to which Plaintiff now objects, specifically "included in bankruptcy," is accurate given that the reports indicate that the bankruptcy was

-8-

dismissed. Plaintiff is required to present evidence creating a triable issue that a credit reporting agency prepared inaccurate information. See Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991).

"A credit entry may be 'inaccurate' within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." Sepulvado v. CSC Credit Servs., Inc., 158 F.3d 890, 895 (5th Cir. 1998), cert. denied, 119 S. Ct. 1344 (1999). Plaintiff admitted that the three accounts in question were included in the bankruptcy filing. See Plaintiff's Memorandum, Exh. A at 116 (Laurent Dep.). Her sole complaint is that the phrase "included in bankruptcy" implies discharge and is misleading. See id. Memorandum at 18. That might be true if the reports did not indicate dismissal, but the uncontroverted facts are otherwise. In the absence of false or inaccurate information, a consumer's belief (or for that matter, a prospective employer's belief) that an item ought to be deleted does not entitle the consumer to relief under § 1681e(b). See Ritchie v. TRW, Inc., No. 91-2208, 1992 WL 21300, at * 2 (10th Cir. 1992) (unpublished).

C.

The court need not address the third ground urged in the motion. Given the resolution of the federal claim, only the supplemental state law claims

remain.  The exercise of supplemental jurisdiction in a removed federal question case is discretionary.  See City of Chicago v. International College of Surgeons, 118 S. Ct. 523, 533 (1997); see also Gold v. Local 7 United Food & Commercial Workers Union, 159 F.3d 1307, 1310 (10th Cir. 1998). Regarding federal question cases initially filed in federal court, when a federal claim no longer supports supplemental jurisdiction, the Tenth Circuit has recognized that, consistent with 28 U.S.C. § 1367(c)(3), the ordinary response will be to dismiss the state claims without prejudice.  See Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d 1221, 1237 (10th Cir. 1997); Ball v. Renner, 54 F.3d 664, 669 (10th Cir. 1995);  see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").  The court declines to exercise jurisdiction over the state claims against Defendant Equifax; those claims will be remanded to the state court.

 NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that Defendant Equifax Credit Information Services, Inc.'s Motion for Summary Judgment filed July 1, 1999 (doc. 68) is granted on the federal Fair Credit Reporting Act claim (count I of the Second Amended Complaint (doc. 18)).

 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff's supplemental state law claims contained in the Second Amended Complaint against Defendant Equifax are remanded to First Judicial District Court, State of

New Mexico.

DATED this 12th day of July, 1999 at Santa Fe, New Mexico.

*Paul Kelly Jr.*
United States Circuit Judge
Sitting by Designation

Counsel:

Timothy L. Butler, Santa Fe, New Mexico, for Plaintiff.

Lewis P. Perling, Kilpatrick Stockton, LLP, Atlanta, Georgia, and A. Drew Hoffman, Eastman, Johnson Monnheimer & Jontz, P.C., Albuquerque, New Mexico for Defendant Equifax.